## Conklin *v.* Chaffee, Appellant.

*Contract—Consideration—Nudum pactum.*

An oral promise made to an owner in possession of land to pay for one-half of a porch which the owner had contracted to have erected, is a mere nudum pactum without consideration, where it appears that the promisor had no other interest in the land than a share of the annual income charge in partition proceedings on the land for a widow for life, which he held by mesne assignment from the widow, and a share in the fund charged on the land after the death of the widow.

Argued Nov. 19, 1917. Appeal, No. 282, Oct. T., 1917, by defendant, from order of C. P. Bradford Co., May T., 1916, No. 5, discharging rule to open judgment in case of Gustavus Conklin v. Maggie Chaffee. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, KEPHART, TREXLER and WILLIAMS, JJ. Affirmed.

Rule to open judgment.

MAXWELL, P. J., filed the following opinion:

On February 7, 1916, counsel for the plaintiff in the above case caused a judgment to be entered in the Court of Common Pleas of Bradford County, Pa., to the above number and term, for $41.66, arising upon a contract filed in No. 251 Sept. Term, 1908, between Jessie Beckwith and Maggie Chaffee. Gustavus Conklin, purchased the interest of the said Jessie Beckwith, upon which judgment execution issued, and the same was placed in the hands of the sheriff. On April 17, 1916, on application of the defendant, Maggie Chaffee, a rule was granted to show cause why said judgment should not be opened and the defendant let into a defense, as to all of the said judgment, except $25, and she be permitted to pay into court, the sum of $25, the amount admitted to be due. The rule has been pending a long time by arrangement and agreement of the attorneys, until No-

244    CONKLIN *v.* CHAFFEE, Appellant.

vember 29, 1916, when depositions were taken, and later, the matter submitted to the court.

In the argument of the rule, counsel verbally agreed, that the court might use the files and records, so far as material and pertinent in No. 38, Sept. Term, 1885, In re Estate of Albert Conklin, deceased, in the Orphans' Court of Bradford County, Pa., and also the files in the case of Jessie Beckwith and Maggie Chaffee in No. 25, Sept. Term, 1908, in the Court of Common Pleas of Bradford County, Pa. From these records, files and depositions, we find the following

### FACTS:

Albert Conklin, was twice married. Dr. Gustavus Conklin, the use-plaintiff, is a son of Albert Conklin by the first wife. Mrs. Maggie Chaffee, the defendant, is a daughter of Albert Conklin, by his second wife.

The real estate of the late Albert Conklin was divided and disposed of, by proceedings in partition. The farm upon which Mrs. Chaffee, the defendant, now resides, was originally purchased from Albert Conklin's estate, by P. E. Woodruff, guardian of Maggie Chaffee, the defendant and two other minor children of the said Albert Conklin. This purchase by Mr. Woodruff, as guardian, was in the partition proceedings above mentioned.

The money coming to the wards of P. E. Woodruff, as guardian, received, in the settlement of said estate, was invested in the purchase of this farm in question. The farm was charged with the sum of $2,622.35. In the partition proceedings, the interest upon which, was to be paid to the widow of the said Albert Conklin, deceased, during her natural life, and at her death, to be divided between eight children of the said Albert Conklin, deceased. Dr. Gustavus Conklin, the use-plaintiff, is one of the eight children, and upon the death of his stepmother, he is entitled to receive one-eighth of this $2,622.35, or $327.79.

Mrs. Maggie Chaffee, the defendant, has bought out, or paid the most, if not all, the interest above mentioned, going to the children of Albert Conklin, deceased, with the exception of the amount going to Dr. G. Conklin, the use-plaintiff.

It appears, that the step-mother of the use-plaintiff, and mother of the defendant, sold and assigned her interest in the above matter to her two daughters, Mrs. Maggie Chaffee, and Mrs. Jessie Beckwith, the former getting two-thirds of the mother's interest, and the latter getting one-third.

Subsequently, Mrs. Maggie Chaffee bought, and Mrs. Jessie Beckwith sold to her, the one-third interest received by her from her mother. By this agreement, Mrs. Maggie Chaffee agreed to pay to Mrs. Jessie Beckwith $41.66 annually, during the natural life of their mother. To secure the payments to Mrs. Beckwith, as they became due, a contract was drawn up and executed between Mrs. Beckwith and Mrs. Chaffee, containing power to confess judgment, and which contract was duly entered of record in No. 251, Sept. Term, 1908, in the Court of Common Pleas of Bradford County above referred to.

Later, Mrs. Jessie Beckwith, sold, assigned and transferred her interest in the contract in question, entered in No. 251, Sept. Term, 1908, Dr. Gustavus Conklin, who is now the use-plaintiff in said judgment.

It appears, that according to this contract, there was due and payable to Dr. Gustavus Conklin, the use-plaintiff, from Mrs. Maggie Chaffee, the sum of $41.66, on November 1, 1915, which was not paid by the defendant. Thereupon, Dr. Conklin, through his attorney, caused judgment to be entered in No. 5, May Term, 1916, to his use, for said amount, and against the said Maggie Chaffee, defendant, and execution issued thereon.

Whereupon, the above rule, on application of the defendant, was granted.

It appears from the evidence, that a porch on the dwelling house upon this farm in question, and upon

which the defendant resides and is the owner, subject to the payment of the above judgment and interest during the lifetime of her mother, was badly out of repair to that extent, that it was dangerous and required rebuilding or renewing, and it is alleged on the part of the defendant, that on or about the last of July, or forepart of August, 1915, they were about to rebuild this porch in question, and that the defendant had contracted for the material and lumber to build the new porch. That the lumber had been hauled to the premises, and while Earl Chaffee, the husband of Maggie Chaffee, the defendant, was unloading the lumber from the wagon, Dr. Gustavus Conklin came along and stopped at their place, was in the house, and while there, the following conversation occurred between the husband of the defendant and Dr. Conklin, to wit:

"Q. Never mind that. What occurred between you and Mr. Conklin?    A. He came along and I and the boys was unloading the lumber, and he had been in the house talking with my wife and he says, 'Earl, what are you going to do with that lumber?' and I says, 'I am going to put up a porch,' and I says, 'Are you going to stand your part?' And he said 'Yes, I will stand my part.' I said 'Enough said' or something like that and continued to unload the lumber. After he stood there and talked, I think we got it unloaded and I asked him in to get supper and he said 'No.' He drove away but he told me that he would stand his part of fixing the porch, putting up the porch.

"Q. What did he say in relation to allowing it or applying it upon his share of the income or use of the place included in the agreement that had been made some years before?

"(Objection of counsel not copied.)

"A. He said he would stand his third and we could deduct it from the rent. This was about the last of July or the first of August. The rent was due on November first.

"Q. To what rent did he refer?  A. To the contract.

"Q. Where was the porch, upon what property?  A. On the Albert Conklin homestead.

"Q. Is that the property in which Mr. Conklin has an interest?  A. Yes, sir.

"(Objection of counsel not copied.)

"Q. State whether or not Mr. Conklin claims to have an interest in this property?  A. One-third interest that he bought of Jessie Beckwith.

"Q. Who claims to have the other undivided interest? A. Maggie Chaffee, my wife.  Two-thirds.

"Q. Is there also a lien, or agreement that is entered into a lien, against this property for an income in which Mr. Conklin has or claims to have an interest?  A. Yes, sir.

"Q. And is that the contract you refer to as the rent in this case?  A. Yes, sir.

"Q. Now this porch was a porch to a dwelling upon these premises?  A. Yes, sir."

Mrs. Maggie Chaffee and her son, Lyle Chaffee, testify, substantially, the same as the foregoing witness.

On the part of the plaintiff, Dr. Conklin testifies in his own behalf, and denies, absolutely, any such conversation, and the defense raised here, by counsel for the use-plaintiff is, that the promise set up by the defendant is nudum pactum.

It will be seen, by careful reading of the foregoing facts, that the only interests that Dr. G. Conklin, the use-plaintiff has, is the right to receive the one-third interest upon said money, which was due Jessie Beckwith from the said Maggie Chaffee, by virtue of his having purchased Mrs. Beckwith's interest, and at the death of his stepmother, to receive one-eighth of the said fund which is a lien upon said lands owned, and in possession of the defendant.

It further appears, that the Chaffees had already purchased and contracted for the material for the rebuilding of this porch in question, and had hauled the same

to their home, and was in the act of unloading it, at the time of the alleged conversation with Dr. Conklin, in July or August, 1913.

If there was a consideration to support the alleged promise or agreement of Dr. Conklin, to contribute one-third of the expense and costs of rebuilding this porch in question, there was enough testified to, on the part of the defendant and her witnesses, to warrant the court in opening this judgment, and framing an issue, for the reason, that it is alleged on the part of the defendant, that the one-third which Dr. Conklin was to pay, was to apply upon the interest due him under the Beckwith contract, on Nov. 1, 1915.

Dr. G. Conklin was under no obligation to pay or contribute to the rebuilding of this porch, his interests were secure whether this porch was rebuilt or, not. He gave his nude promise to pay this one-third, if the evidence on the part of the defendant is believed. The material for the porch in question, and for which the defendants are seeking to recover one-third from Dr. Conklin, was not even purchased or contracted for, on the strength of Mr. Conklin's promise, but was previously purchased.

"Consideration like every other part of a contract must be the result of agreement. The parties must understand and be influenced to the particular action by something of value or convenience and inconvenience, recognized by all of them as the moving cause. That which is a mere fortitous result flowing accidentally from an arrangement, but in no degree prompting the actors to it, is not to be esteemed a legal consideration." (Quoted from opinion of the court bottom of page 436.) Estate of Jonathan Dutton, deceased, 181 Pa. 426.

Mutual promises of the parties to do or refrain from doing certain things constitute valuable consideration, and are sufficient to make the contract binding, but in this case, according to the evidence on the part of the defendants, the promise was all upon one side. In other words, the defendant did not contract for anything she

had not already contracted for, on the strength of the promise, and she parted with nothing that was valuable, upon the strength of the promise, and that the improvement of her real estate, was all for her own benefit, and did not benefit Dr. Conklin, in the least. The authorities along this line may be found in Vale's Pa. Digest, Vol. II, col. 3774.

"The promise to pay a constable for arresting a criminal under a warrant is nudum pactum": Smith v. Whildin, 10 Pa. 39.

"On the other hand there is no consideration for a promise where no benefit is conferred upon the promisor nor detriment suffered by the promisee, and the promisor neither undertakes to do anything which he is not bound to do nor forbears to do anything which he has a right to do. It makes no difference that one to whom a naked promise was made has suffered damage through relying or acting upon it. The detriment to the promise which suffices as a consideration for a contract must be a detriment on entering into the contract, not from the breach of it": Cyc. of Law and Procedure, Vol. IX, page 316, par. 5.

"A contract by parol needs a consideration to support it": Crawford's App., 61 Pa. 52.

And now, to wit: February 5, 1917, the rule granted on April 3, 1916, upon application of the defendant in the above case, to show cause why the said judgment shall not be opened and the defendant let into a defense, as to all of the said judgment, except $25, etc., is hereby discharged.

*Error assigned* was order discharging rule to open judgment.

*J. Roy Lilley,* with him *Wm. P. Wilson,* for appellant.

*Chas. M. Culver,* with him *D. C. DeWitt,* for appellee.

PER CURIAM, March 2, 1918:

The opinion of the court below in discharging a rule to show cause why the.judgment should not be opened and the defendant let into a defense, is a complete answer to the assignment of error which is urged upon our attention, and for the reasons therein given the decree is affirmed.